Case No. 16-1209, United Source One, Inc. Petitioner v. United States Department of Agriculture, Food Safety and Inspection Service, Inc. et al. Mr. Gardner for the petitioner, Mr. Busa for the respondent. May it please the Court. Let the courtroom clear. Sorry, go ahead. Let the courtroom clear. All right, Mr. Gardner. May it please the Court. United Source One is a small company that exports beef and other foodstuffs to the Arabian Gulf area of the Middle East. It is regulated by the United States Department of Agriculture and a sub-agency of that department known as the Food Safety and Inspection Service. Mr. Gardner, where did you get the label from the original source? Did you print it? Yes, Your Honor. All right. And do you have any contract with consenting sources? Not that I'm aware of, Your Honor. All right. So you don't know what that entails once the source has agreed or allowed you to use its label, what that entails? You don't know about that? Your client doesn't? I know that we print the label. We know what's on the label. Well, is this, is Grand, whatever, is that your only source, the original source here? The label on, well, let me just ask you, on JA67, what label did you use? The Great Plains originals? Yes. All right. And what about the one beside it, United Source One? Can you get your Joint Appendix out? On page 67, the way I read the regs is you put either one or the other on, and it looks like from 67 they were both on there. I'm at 67, Your Honor. Right. Do you know what label was on the reboxed meat? Do I know what label was on the reboxed meat? These are, yeah, these are the labels, the Great Plains labels, what we used. All right. Did you use the one on the left, your own United Source One label? Yes. Yes, that's a label, but that's our label. It's not the ID label that I think is the. . . I know that. I'm just trying to figure out what's on your reboxed product, and in this case, when you were inspected, you had both labels on, your own and the one from the source. Well, actually, when we were inspected, we just had the one from the original source. Our label was at another place on the box, but the actual ID label was the Great Plains one. All right. Thank you. Do you have, I do want to follow up on one. You don't have any consenting sources. Do you have other sources, and do you print their labels? No, we do the printing. No one, it's our position, of course, that there was no consent requirement, and we think that that's true with respect to the applicable regulations. There's nothing in the statutes. There's nothing. . . How do you print it? I mean, do you take the label off the product and copy it, or what? I'm not sure about the mechanics of the printing, Your Honor. All right. It just, all right, go ahead. All right. In January 2012, US-1 initiated a custom export reboxing program that was established under supervision of the agency. The agency performs a hands-on visual inspection of each vacuum-packed cut of beef and places the beef in smaller, sturdier boxes. This was basically a response to customer demand and to certain desires of certain purchasers in the Middle East for the product. It was also supported by the need to consolidate multiple vendor numbers and designs within a single brand. So it enabled us to market more effectively in the Middle East, where you have some attitudes about what they like in their meatboxing that are different maybe than in the United States, for example. But the basic point is that we operated this program for three years under supervision of the agency. There was every attempt to comply with the regs of the agency, and there was no challenge or any finding of misbranding for the three-year period that we operated. It's important to recognize that the rebox program did not process the meat or alter the vacuum packaging of the meat in any way. We relied on FSI Enforcement Directive 12600.1, which basically allowed us to retain and apply the official establishment number, in other words, the original producer number, to the export box, rather than change that number on the export boxes to the USDA-ID warehouse number assigned to us. There are several steps you have to follow to use the label of another business, and particularly the label of the source. And maybe USDA dropped the ball on implementing its own regulations, that is, by not verifying that you were supposed to have records, that the source has transferred the labels to you, but you're not just categorically allowed to print someone else's label, put it on your box. That's true, and we're not, but the rules do allow us to do that. The rules do require that this process is supervised by the inspectors. In other words, when we remove meat and rebox it, there's an inspector there every time, and they're basically, when that removal is done, they affirm the requirements of the regulations that it's been complied with. What I understand you say we're charged with is not having, using this without having consent. Is that what you understand this to be about, or am I misunderstanding you? Well, I understand, our position is that we didn't have. Well, just answer that yes or no question, that that is. It is about consent, yes. Yeah, and is there anything in the Regulations that requires you to have consent? There is nothing, Your Honor. Okay, thank you. In fact, I would direct the Court's attention to FSIS Directive 12.600.1, and it states in pertinent part, when facilities label or relabel product at an ID warehouse, that's all warehouses, freezer, cold storage, or dry storage facility, either the originating official establishment number or the official warehouse number may be used. We are specifically authorized to do that by the Enforcement Directive of the agency that regulates it. Where is that Directive? It is in addendum at 51, and I've been looking for it because the way I read the Directive, you are completely wrong about whether you need consent or not. Now, there are duties on the USDA that may not have been performed for these three years, but Paragraph 2 of 51, Paragraph 2 under A, Identification Service, says inspection program personnel will verify that facilities are using approved labels, wrappers, and containers, so forth. The next sentence, when facilities label or relabel, which is what you did with Great Plains, you're supposed to have either that label on or your own. You apparently had both. But the next sentence says facilities may label product with the inspection legend, which is the Great Plains legend, provided they apply the label under FSIS supervision. Then number 3 says if you do this, that is if you use the label of the originator or of the source of the meat, that, again, USDA will verify that you did it in a manner that clearly indicates that the product was last handled and labeled at the ID facility. Then it goes on to say you all must maintain records of label transfers and records of products labeled or relabeled. Now, I can put my hands on, and I can ask USDA, but in another part of the regulations, you are required to keep the records of transfer, of allowing you to use this label, not print it on your own, but get it from Great Plains before you use it. This isn't a transfer situation, and they do view the labels when they're there doing the inspection. Why is it not a transfer? You printed them. You didn't get them from Great Plains. I think the transfer refers to an originating producer transferring its labels. It doesn't apply to us. That is the point. Who does it reply to if it doesn't apply to you? Originating producer, that's what that refers to. We're not an originating producer. We're an ID facility, which is regulated in a much more relaxed sense. Not according to this directive. You're supposed to label with somebody from USDA standing over you. They are. That's exactly what happens. You said that. They're supposed to verify that when you put a label on other than your own, that you have the transfer records that you're supposed to keep to establish that. If you look at Mr. Harrell's testimony, he testifies that we kept all those records that we were required to keep, all of the records. The only thing here that's at dispute is whether you had to have consent or not. That is correct. Well, is it your position that you had the consent because you had the transferred labels? I mean, if you did, then I agree with you. But you're saying we didn't even have to have the records of transferred labels? Yes, that is what we were saying. I think the confusion here is the distinction between transferred labels and the labels that we're authorized to do under their rules. What do you think a transferred label is? I think a transferred label is when an originating producer transfers to another company. A reboxer. It's not always a reboxer. Well, maybe not, but in your case. But I don't think the transferred label situation is applicable here. I think the key issue is whether there was consent or whether we had to continue. Whether there was a requirement. Yeah. There was not consent. I think that's a given. At least there's no evidence of consent. Absolutely. Then the issue between you and the government is, did you have to have consent? That's correct. Thank you. The consent issue, of course, was also accompanied by a requirement that we keep records that the rules obviously don't require us to keep. All right. Is he into his? All right. Well, I used up a lot of your time. But anyway, we'll give you some time to rethought. You're over your time. Thank you. Mr. Boussa. Now, what about all the things you're supposed to do? Good morning. May it please the Court. Joe Boussa on behalf of the government. I'm happy to get into that, Your Honor. This is not a situation in which United Source 1 told the inspectors three years ago when they began this reboxing program that they would be printing off the originating sources label and applying it themselves to their new box without that source's consent or control. And so for the three years … The issue is about the consent and control issue. Where does the requirement come from that they have to have consent? It's the Prohibition on Misleading Labeling. Well, just a moment. I'm sorry. It appeared to me that you're enforcing a rule that doesn't exist. Oh, no, Your Honor. Why would I look and find that requirement about consent that you say they're in violation of? Well, so you'd find the Prohibition on Misleading Labeling at 21 U.S.C. 607-E as well as 610-B and 601-N. Well, I found the language in there. It prohibits the use of labeling on meat that is misleading in any particular. And this is just an interpretation of what it means to be misleading in the specific factual context. Okay. Read me the part about them not having consent. I don't think that's in there, is it? Well, so the Prohibition on Misleading Labeling doesn't specify every way in which labeling can be misleading. Well, how is this one misleading? Well, so it's misleading because … Well, wait a minute. It shows the originating source of the meat. That's what it's supposed to show, right? No, Your Honor. Absolutely not. On page 112 of the Joint Appendix, the administrator makes clear that in a re-boxing situation, you have two facilities involved. You have the originating facility. They have their own distinct number. You have the re-boxing facility. They have their own distinct number. And the use of an originating facility number on a re-boxed product communicates the institution that re-boxed that product, one that was responsible for handling that product for that specific step in the supply chain. And so when U.S. 1 was using the originating facility number … This is exactly the same information that would be given if they had the consent, right? So if they had consent, the message would match the reality. Yes, Your Honor. So what is it they're misleading about if it shows the same information that would be there if they had the consent? Well, it's misleading because the message does not match the reality. The message that U.S. 1 is sending to the world is that the originating facility here was ultimately responsible, had control of the re-boxing of this product. I may be reasoning in a circle on this that they violated by not having consent. When I ask you what required them to have the consent, you tell me, well, by sending this out, that implies that they have the consent. I don't see how it does unless there's a requirement somewhere that they have to have the consent. So a couple of responses to Your Honor's question. What you're telling me is that it would be a good idea to have such a rule, and maybe it would be a good idea to have such a rule, but I don't see it in the rules that you presented. Well, there's already a rule prohibiting misleading labeling in any particular quote-unquote. Yes, but that's a different question entirely as to whether you had consent. If the labeling said, we have consent, and they didn't, then that would be misleading. No, Your Honor, because the message is misleading. It's a literary silence as to whether they had consent or not. So I don't see how you can say it's misleading. A message is misleading when the message conveys a certain sense of what the facts on the ground are, and the facts on the ground do not match that message. That's what we have here. What facts on the ground does the message not match? So the message being sent— What facts on the ground does the message not match? That there is absolutely no relationship of permission or control between the originating facility and the reboxer in this case. The message being sent is that there is such a relationship. That's what it means to you. Where does it say that? This message being sent business is quite different than misleading. That's been a lot of my life as a fraud prosecutor. You've been a lot of my life as a fraud prosecutor, and I can't find a misleading message on that label. I'm sorry. My understanding of what it is to be misleading is simply to convey a message that is not true, given the reality. I think that's what it means. But what message is it that they're conveying that's not true? The message they're sending is this came from this originating source. The message they're sending— The fact on the ground is it did come from that originating source. But that's not the message they're sending, Your Honor. The message they're sending is that not just that the meat inside came from the originating source, they're also sending the message that the originating source is in control of the reboxing step. Did you say that on the label? Did you say that on the label? No, but, Your Honor, I would not have to in order to convey that message, if that is the common understanding in the industry, which, of course, the agency here said was true. And it's an experience. It's allowed—I'm sorry, Your Honor. Maybe it's wrong to couch it in terms of consent, although that's what your letter said. But these records of the transfer, the legitimate transfer of the label from the source to the reboxer, have to have some sort of meaning. And according to the directive that I read earlier, you all are supposed to verify those records. In that three-year period, you would have found that they did not have the transferred labels, that they were printing them themselves. It's certainly true that the agency personnel on the ground could have been verifying that this reboxer was operating with consent. Well, he's required to. That's one of his jobs. I think it's reasonable in this context only with the understanding that, you know, FSIS has never come across a reboxer like US-1, to our knowledge, that is using an originator's label without its consent. Under those circumstances, it's very reasonable for these front-line inspectors— If they had had consent, would there be any violation in using exactly the label they used? If they had had permission before consent? I don't believe so. So your problem is not whether they kept records, it's not whether they were doing the printing. Your problem, that you call to their attention, is that they didn't have the consent. That's right, Your Honor. That would be all the lawsuit is about, and I can't find a requirement that they get that consent. Maybe it would be a good idea to have it. Maybe that would serve the understanding of the industry. But the fact that there would be a good rule doesn't mean there isn't a good rule. Well, the USDA is not required to promulgate a new rule to specify every way in which labeling on meat can be misleading. The USDA is a statutory agency. They have only those authorities that are granted by statutes and verifications. Certainly not. Absolutely not. And they have the authority. It would be a good idea to have a rule that did this, but I don't find one. And if they don't have some law or rule that gives specular rules that give this requirement, I don't see how we can enforce it, Your Honor. I'm sorry, Your Honor. Just to repeat the government's position, it is misleading when the message being sent does not match the reality on the ground. That is what we have here. The reality on the ground is that this meat did originate from where the label came from. And you tell me that would be perfectly true if they had consent. Yes. But I don't find anything in either the message, the printing, the regulations, the rules, your correspondence. I don't find anything anywhere that creates that consent requirement. I'm sorry, Your Honor. I don't think that to determine if something is misleading, you look only at the message. You have to compare the message to the reality. You have to say, is that message misleading? The reality is he came from where the meat came from. No, but the message being conveyed is not where the meat came from. It is also who is in charge of this step in the supply chain. That is why USDA creates two different numbers, one for reboxing facilities, one for originators. And this matters a lot to the agency. It's very important that the purchasing public and inspectors be able to trace. It matters. Maybe you don't have a rulemaker. We have a rulemaker. Let me ask you this. It might not be misleading if Great Plains were misspelled. That would be misbranding, but it might not be misleading. And my question is, and I've tried to work out this hypothetical. Let's say I go to Kroger's to buy Boar's Head meat, and Boar's Head meat is reboxed by U.S. Source 1, United Source 1. I get deathly ill. What difference to me does it make as a consumer whether Boar's Head gave U.S. 1 permission to use that label? I'm trying to figure out how, and you've got in your brief that this is misleading to people knowledgeable in the industry. And I'm not sure that's enough to say it is, if that's enough people misled. I mean, you may have to mislead the consumer and not just somebody in the industry, but that's a different question. But I'm having trouble understanding how, whether or not Great Plains knows about its label, let's leave consent out, knows about its label being printed and put on a package by U.S. 1. I'm sorry, just to clear up a misconception, I believe that page 67 of the joint appendix, my understanding is that Great Plains is United Source 1's own brand, although my opposing counsel can clear that up. My understanding is that here on page 67 what we have is United Source 1's own brand plus the originator's establishment number here in this circle in sort of the middle of the page. And it's that number that we are concerned with. Okay, so this Great Plains is not the source. No, my understanding is Great Plains is United Source 1's own branding of their Reeboks product. But, again, I hope that opposing counsel can clear that up. But to answer the question you're concerned with, why does this matter and who is it misleading? But then it's not Reeboks if it's its own. Oh, no, it is Reeboks. They've opened up the originating source's box. But Great Plains, is Great Plains in the same building you said? I'm sorry, Your Honor. I think that Great Plains is simply the brand name that U.S. 1 puts on its Reeboks product. My understanding is that here at page 67 there is no indication of the originating source other than this establishment number inside this inspection legend. Right. And we don't know. It's that establishment number we're focused on. We don't know in this record who the originating source is. I'm not sure, Your Honor, but I would invite you to ask my opposing counsel that question. As to why this matters and who this matters for, it matters at two moments in time, I believe, at least two. One is when you're a bulk purchaser and you're purchasing product, you may, if you find Reeboks product that has the originator's number on the outside label, you might think, great, I trust this originating source. They're a well-known name in the industry, and I trust that they have supervised even the Reeboksing step fairly well. And so I'm going to purchase the product and feel free to resell it to small restaurants with the knowledge that down the line if there's a product, I know how to get in touch with that originating source, the established player in the industry. It can matter at that purchasing step. It can also matter at the step at which, say, there's adulteration found in the meat, and that adulteration could have been introduced either at the original processing point or at the Reeboksing point, say, by the wet aging process that U.S. 1 engages in. If that did result in adulteration, you'd want to be able to track down who was responsible for what. The number here is your first line of defense. If you're investigating a claim of adulterated product, you know exactly who to go to because that communicates not only where the meat came from, that's already communicated by the label on packages of meat inside the box. This number here communicates who you go to if you're investigating adulteration that resulted during the Reeboksing process itself. Now, it may be true without that number you'd still be able to ultimately find the Reebokser, but it's about time, and time can be critical in these matters. All right. Is it in the record if whoever the originator was, let's say Boar's Head, if Boar's Head had transferred its labels for use by U.S. 1, what came with that? In other words, was Boar's Head over there making sure that U.S. 1 complied with every regulation? It would be if Boar's Head had that opportunity, Your Honor. My only question is this. Who is the source and not the consumer? Because if I get sick and sue Kroger's, and Kroger's brings in the Reebokser and Boar's Head, and Boar's Head said, wait a minute, they had no authority to use my label, you know, I'm going to sue them in a cross-claim or whatever. What does that do to me? How does that affect me? It doesn't seem to. No, so the point here is to allow you to protect yourself when, say, you're a bulk purchaser and you're purchasing Reebok's product, you might want to be able to rely on that originating source. So let's say you're talking about Kroger's then? Correct, for instance, or the importer in the Middle East in this case. You might want to be able to rely on the fact that maybe you trust the brand name of the originating source and you trust them to oversee Reeboksing. You may, if you got to know them, trust U.S. 1, but you may not know much about it. If U.S. 1 is communicating the message, look, this Reebok's product, it's subject to the consent and control of the originating facility. It's sending a misleading message to that purchaser that could give that person confidence in a misleading way that there's a certain thing that is true that is actually not true. These people do not have a relationship with these originators that allow the originators to exert consent or control over the Reeboksing of this product. And just to, I see I'm out of time, just three of these matters in this case. We've discussed wet aging in our brief. That is a process whereby you chill meat for, I believe, about 28 days. Certainly there are things that happen in the Reeboksing stage, not just the processing stage, that can result in adulteration. It's very important to have very clear lines drawn about who is responsible for what at various stages of this supply chain process. Well, what would the originator have been able to do to stop the, or to affect the wet aging? Well, for instance, if it had actually transferred its label? Well, the originator could have withheld consent, say, by not transferring labels or not allowing this person to print off labels. The ability to withhold consent gives that originator the ability to oversee the process and say, okay, do you do wet aging? How are you doing it? Let me look at this. How does the originator know about it? Well, because they have the opportunity to look into it at the moment when US1 asks for consent. When US1 comes to the originator and says, hey, can we use your number on our Reeboks meat, the originator has the ability to think about it and say, well, I'd like to look into your processes a little bit before I allow that to happen. Where is that set out anywhere? I think that's just a functional result of the situation of consent and control. If you have the ability to withhold consent, you have the ability to control. Okay. Thank you very much. All right, thanks. Does Mr. Gardner have any time? All right, why don't you take one minute? I'll be brief, Your Honor. The agency has never explained what false or misleading message was conveyed by the labels or how a label containing the accurate establishment number of the facility could be misleading or identify any evidence in the administrative record that anyone was misled by US1's application of the originating producer's establishment number. The only evidence in the administrative record... They don't have to do the latter, do they? Pardon? They don't have to do the latter. Yeah, they don't have to find actual people. That's true, but I think it goes to the force of the argument as far as, you know, is this really a problem? And I don't think it's really a problem under these circumstances. In fact, the only evidence in the administrative record, Your Honor, concerning any historical practice, which they're relying on, is that US1 operated its reboxing program using the official establishment number for over three years with the full knowledge and approval... What's the problem with doing it the way they want to do it? What is the problem? Incredibly expensive. That means we've got to go to every one of them and ask their permission. Plus, a lot of them are competitors. We buy from competitors to ship to the Middle East, so they're going to know basically what we're doing as a competitor. How do you actually make this label? Do you photograph it on the side of beef and then reproduce it and put it on the box? Your Honor, I honestly can't. I don't have knowledge as to the specific mechanics of production of the label. I can't tell you that at this point. And you also, I think, said you didn't know whether there were other sources that your client uses. Other sources than what? Other original sources. Other originating producers? Yes. There's a lot of originating producers. All right. So do you just put their labels on everything? I have a hard time picturing a business taking a label that belongs to someone else and putting it on. I mean, maybe they remove it from the beef and put it on the box. I don't know. Typically, we don't try to disguise this. They know about this. No one has ever complained. No producer has ever complained that we're improperly using their labels. And there's no evidence in the administrative record of any complaints. So I guess my time is up, Your Honor. All right. Thank you.
judges: Henderson, Kavanaugh, Sentelle